UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

JEANNIE J WRIGHT,

    Plaintiff,

  v.

CAROLYN W. COLVIN,
Commissioner of Social Security[1],

    Defendant.

NO.  CV-11-0286-JLQ

MEMORANDUM OPINION AND
ORDER RE:  MOTIONS FOR
SUMMARY JUDGMENT

     BEFORE THE COURT are Cross-Motions for Summary Judgment.  (ECF
NO. 14 & 17).  Plaintiff is represented by **Maureen Rosette**.  Defendant is
represented by Assistant United States Attorney **Pamela J. DeRusha** and Special
Assistant United States Attorney **Alexess D. Rea**.  This matter was previously
before Magistrate Judge Imbrogno and reassigned to the undersigned for all
further proceedings on April 2, 2013.  The court has reviewed the administrative
record and the parties' briefs. The case was submitted for decision without oral
argument on April 8, 2013.

     This court's role on review of the decision of the Administrative Law Judge
(ALJ) is limited.  The court reviews that decision to determine if it was supported
by substantial evidence and contains a correct application of the law.  *Valentine v.
Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).  This court is

---

    [1]Carolyn W. Colvin became the Acting Commissioner of Social
Security on February 14, 2013.  Pursuant to Rule 25(d) of the
Federal Rules of Civil Procedure, Ms. Colvin is substituted for
Michael Astrue as the Defendant in this suit.  No further action
need be taken to continue this suit by reason of the last sentence
of 42 U.S.C. 405(g).

ORDER - 1

obligated to affirm the ALJ's findings if they are supported by the evidence and reasonable inferences to be drawn therefrom. *Molina v. Astrue*, 674 F.3d 1104, 1110-11 (9th Cir. 2012). Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion.

## I. JURISDICTION

In March 2008, Plaintiff/Claimant Jeannie Wright filed an application for supplemental security income (SSI) and disability insurance benefits (DIB) alleging a disability onset date of September 30, 2005. Plaintiff alleges disability primarily attributable to back problems, including degenerative disc disease, scoliosis, and "bulging discs" in her spinal column, all of which resulted in chronic pain. Her application was denied initially, and on reconsideration. After timely requesting a hearing, Plaintiff appeared before Administrative Law Judge Connie Haskins on March 23, 2010. (Transcript at ECF No. 10-2 pages 29-52). The ALJ issued a decision denying benefits on April 12, 2010. (ECF No. 10-2, p. 13-28). Plaintiff filed a request for review with the Appeals Council, which was denied on July 19, 2011. The decision of the ALJ became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).

## II. SEQUENTIAL EVALUATION PROCESS

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if the impairments are of such severity that the claimant is not only unable to do her previous work but cannot, considering claimant's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§

423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987):

Step 1: Is the claimant engaged in substantial gainful activities? 20 C.F.R. §§ 404.1520(b), 416.920(b). If she is, benefits are denied. If she is not, the decision maker proceeds to step two.

Step 2: Does the claimant have a medically severe impairment or combination of impairments? 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step.

Step 3: Does the claimant's impairment meet or equal one of the listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity? 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step.

Step 4: Does the impairment prevent the claimant from performing work she has performed in the past? 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant is able to perform her previous work, she is not disabled. If the claimant cannot perform this work, the inquiry proceeds to the fifth and final step.

Step 5: Is the claimant able to perform other work in the national economy in view of her age, education and work experience? 20 C.F.R. §§ 404.1520(f), 416.920(f).

The initial burden of proof rests upon the Plaintiff to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921

(9th Cir. 1971).  The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation.  The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## III.  STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence and the [Commissioner] applied the proper legal standards." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance.  *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner.  *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989).    This court may set aside a denial of benefits only if the basis for denial is not supported by substantial evidence or if it is based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is the role of the trier of fact, not this court, to resolve conflicts in the evidence.  *Richardson*, 402 U.S. at 400.  If the evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ.  *Thomas*, 278 F.3d at 954 (9th Cir. 2002).

## IV.  STATEMENT OF FACTS

The facts are contained in the medical records, administrative transcript, and

the ALJ's decision, and are only briefly summarized here.  At the time the ALJ issued her decision, Plaintiff was 44 years old.  Plaintiff did not complete high school but obtained a GED.  She worked for several years as a carpenter, but stopped doing that work in 2000.  She worked as a Certified Nurse Assistant from 2001 to 2004. (ECF No. 10-6 at 185).  Thereafter, Plaintiff worked sporadically at a poultry farm and at a sewing plant between 2004 and 2007.  The record establishes that Plaintiff had not worked since 2007.

Plaintiff claimed disability based primarily on her back condition and pain. Plaintiff also complained of depression related to the chronic pain. The ALJ found Plaintiff was not disabled.

## V.  COMMISSIONER'S FINDINGS

The ALJ found at **Step 1** that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of September 30, 2005.  Plaintiff had worked in 2006 and 2007, but her earnings did not meet the level of substantial gainful activity. (ECF No. 10-2, p. 18).

At **Step 2**, the ALJ found the medical evidence established the following severe impairments: degenerative disc disease of the spine and curvature of the spine. (*Id*.)  The ALJ found Plaintiff's assertion of depression to be non-severe. (*Id.* at 18-19).

At **Step 3**, the ALJ determined that the Plaintiff's impairments or combination of impairments did not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  Specifically, the ALJ considered whether Plaintiff met Listing 1.04 for degenerative disc disease and found that the records did not support a finding of compromise of the nerve root or spinal cord.

At **Step 4**, the ALJ found that Plaintiff had the RFC to perform the full range of sedentary work, except Plaintiff could only frequently push and pull, bilaterally, and only occasionally stoop, crouch, kneel, and crawl. (ECF No. 10-2,

p. 19).  In making this determination, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible. (*Id.* at 20).  The ALJ found that Plaintiff's testimony concerning household chores was not consistent with her alleged limitations.  The ALJ noted there was not medical evidence of spinal stenosis or spinal cord compression.  The ALJ observed that Plaintiff benefitted from physical therapy and a home exercise program.  The ALJ also expressed concern that Plaintiff "had some problems with abusing prescription medication." (*Id*. at 21).   The ALJ found that Plaintiff "displayed suspicious actions of misuse of narcotics" and noted that her urinalysis was negative for narcotics at a time she was prescribed Morphine and Hydrocodone. (*Id*. at 22).

The ALJ concluded the Step 4 analysis by finding that Plaintiff was unable to perform her past relevant work.

At **Step 5** the ALJ found, considering Plaintiff's age, education, work experience, and residual functional capacity ("RFC"), that there were a significant number of jobs in the national economy that Plaintiff could perform.  The ALJ concluded that Plaintiff could not perform the "full range" of sedentary jobs, but could perform a "wide range" of sedentary jobs.  The ALJ did not identify any specific jobs that Plaintiff could perform, but based on the vocational expert's testimony concluded sufficient jobs existed in the national economy which Plaintiff could perform.  The ALJ concluded Plaintiff was not disabled.

## VI. ISSUES

Plaintiff's briefing does not clearly frame the issues for review.  Plaintiff's Memorandum (ECF No. 15) in support of summary judgment fails to set forth any specifically delineated issues.  There is no section of the brief entitled "Issues Presented" or stating that the ALJ erred in specific matters. Rather there is only a 7-page section entitled "Law and Argument" that contains no sub-headings.  As

best this court can discern, the issues are summarized on page 10: 1) no substantial evidence to support the ALJ's conclusions; 2) Plaintiff is more physically limited than the ALJ concluded; and 3) "the ALJ did not properly consider or reject the opinions of treating sources nor properly consider or reject her testimony regarding her limitations from physical impairments." (ECF No. 15, p. 10). The "no substantial evidence" is a generic statement not properly briefed and developed. To the extent Plaintiff suggests the ALJ improperly rejected the opinions of treating physicians, that point is not developed. Plaintiff's only discernible issue on appeal is that the ALJ did not properly consider or reject her subjective testimony regarding physical impairments. This court should not address issues which are not specifically identified nor supported with developed arguments. See *Carmickle v. Commissioner*, 533 F.3d 1155, 1161 n. 2 (9th Cir. 2008)(noting that the court will generally "not consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief").

The Commissioner, left to respond to Plaintiff's vague brief, identified the sole issue on appeal as: "Whether the [ALJ] erred in not including additional physical limitations in the residual functional capacity (RFC) assessment?" (ECF No. 18, p. 3). Plaintiff's Reply brief focuses on one issue: "the ALJ did not properly consider nor reject her testimony regarding her limitations from her impairments". (ECF No. 19, p. 3). The court will address that singular issue.

## VII. DISCUSSION

### A. **Did the ALJ err in failing to properly consider or reject Plaintiff's testimony concerning her pain and physical limitations**?

Plaintiff argues that the ALJ did not "specifically reject her testimony regarding her limited ability to sit, stand, walk, lift, and carry, as well as her frequent need to rest throughout the day." (Reply Br., ECF No. 19, p. 3). If such testimony is credited, Plaintiff contends, a finding of disability is required because the vocational expert testified that there would not be sufficient jobs if Plaintiff

needed to change positions frequently or required a sit/stand option.

Plaintiff testified at the hearing before the ALJ that she could only sit for about 30 minutes at one time before her back starts hurting "really bad" and she experiences some numbness in her left leg. (ECF No. 10-2, p. 40).  She further testified that she could only stand for about 30 minutes at a time.  She also testified that she typically lays down five or six times a day, for a duration of 20 to 40 minutes. (*Id*. at 43).  When asked if she could perform a job with a sit/stand option, Plaintiff testified: "Honestly - - I honestly don't know.  I'm very, very depressed.  I've got anxiety really bad." (*Id*. at 39).

The vocational expert, Deborah LaPoint, considered Plaintiff's past work history and her physical limitations.  When asked a hypothetical which included Plaintiff's need to have a sit/stand option and be able to change positions at will, Ms. LaPoint testified that there would be no jobs Plaintiff could perform.  Therefore, if Plaintiff's testimony is credited, that she needs flexibility and the opportunity to frequently shift positions, then she would be disabled as the vocational expert has testified there are no jobs she could perform.

In deciding whether to accept a claimant's subjective symptom testimony, the ALJ "must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  The *Cotton* analysis comes from the Ninth Circuit's opinion in *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986), and thereunder the claimant must: 1) produce objective medical evidence of an impairment or impairments; and 2) show that the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. *Smolen*, 80 F.3d at 1281-82.  If a claimant meets the *Cotton* test, then the ALJ may reject the claimant's testimony regarding the severity of symptoms only based on specific, clear, and convincing reasons. *Id*.

1  at 1284.

2      (1) **Objective Medical Evidence of Plaintiff's Back Condition**

3      In 2007, an MRI of Plaintiff's spine showed "mild scoliosis" and "mild to

4  moderate disc bulging". (ECF No. 10, p. 253).  Physical therapy was

5  recommended, which Plaintiff attended.  Plaintiff also received trigger point

6  injections for her back. (*Id*. at 262).  Plaintiff had a bone density screening in

7  January 2008, which showed low bone density, but not severe enough for a

8  diagnosis of Osteoporosis. (Id. at 275).  While Plaintiff was attending physical

9  therapy in early-2008 she described her pain as being between a 6 of 10 and 8 of

10  10.  She reported feeling more depressed and frustrated with her medical care. (*Id*.

11  at 290).  She saw Dr. Udarbe in September 2007 for depression and insomnia.  She

12  was given medications for her chronic pain, anxiety, and insomnia. (*Id*. at 328).

13      In March and April 2008, Plaintiff had additional epidural steroid injections.

14  (*Id*. at 425-26).  In June 2008, Dr. Laurie Baltutat, a disability examiner, noted that

15  claimant's subjective symptoms "are not fully credible with exams consistently

16  documenting a greater ROM [range of motion] than her report." (*Id.* at 436).  Dr.

17  Baltutat further noted that Plaintiff's "credibility is further eroded with apparent

18  drug seeking behavior noted in multiple ER visits." (*Id*.).

19      In November 2008, Plaintiff was examined by Dr. Goodman at St. Luke's

20  Rehabilitation.  His notes reflect that Plaintiff "sits with apparent distress" during

21  the physical examination. (*Id*. at 501).  A December 2008 office note from Ms.

22  Bachko, ARNP, reflects that Plaintiff's back pain is showing "some improvement

23  with medication-morphine" and that Plaintiff "is very happy and is not

24  experiencing any side effects from the morphine." (*Id*. at 526).  In a January 2009

25  office visit, Plaintiff again reports that her back pain is improved.  Plaintiff

26  reported that she "feels great" and is "getting good relief with current drug

27  regimen." (*Id*. at 530).  In March 2009, Plaintiff had an Ameritox counseling

28

session because she had a negative urinalysis for opiates when she was to be taking both Morphine and hydrocodone.  There was also an irregularity in Plaintiff's pill count (missing approximately 14 Morphine) and Plaintiff then admitted to taking more than recommended. (*Id*. at 544).

In June 2009 at an office visit with Ms. Ewart, ARNP, Plaintiff reported her pain level as a 3 of 10, and reported that she has recently been able to do some swimming. (*Id*. at 554).  At a July 2009 office visit, Plaintiff again reported swimming, that she had not taken her pain medication that morning, and that her depression was "well controlled". (*Id.* at 564).  Additionally, 2007 DSHS evaluation found that Plaintiff's overall work level was sedentary, but also stated that Plaintiff's limitations on work activities could be expected to last for 6 months without medical treatment. (*Id*. at 663).  In order to be found "disabled", a plaintiff must have an impairment that has lasted, or can be expected to last, for at least 12 months.

### (2) *Cotton* **test and Credibility Analysis**

The objective medical evidence clearly establishes that Plaintiff had a physical impairment with her back, and that impairment could reasonably be expected to cause her alleged symptoms.  The ALJ so found and Plaintiff met the *Cotton* test. (ECF No. 10-2, p. 20).  The ALJ was required to assess the credibility of Plaintiff's testimony concerning the severity of her symptoms and limitations.  The ALJ found that Plaintiff's statements concerning intensity, persistence, and limiting effects of her symptoms were not entirely credible.  The ALJ then stated that Plaintiff's description of the housework she performed was not consistent with her alleged limitations.  The ALJ noted that following physical therapy Plaintiff was able to walk pain free for up to 8 blocks.  The ALJ also observed that Plaintiff may have had some problems abusing prescription medications: "On three occasions, the claimant seemed to be untruthful about her difficulties with

hydrocodone." (*Id*. at 21).  The ALJ also noted the "suspicious actions" surrounding the negative urinalysis in March 2009, and Plaintiff's admission of taking more pain medication that prescribed.

The ALJ did not entirely reject Plaintiff's subjective complaints, nor did the ALJ make an affirmative finding of malingering.  However, the ALJ did find that Plaintiff's complaints were not entirely credible and were at times inconsistent with the medical record.  In sum, the ALJ articulated numerous clear and convincing reasons why the ALJ concluded that Plaintiff's subjective complaints were inconsistent with her daily activities and with aspects of the medical record. The ALJ found her testimony concerning limitations inconsistent with her description of the housework she performed. (ECF No. 10-2, p. 20).  The fact that Plaintiff can partake in housework is not determinative of disability. *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989).  However, the ability to participate in housework is relevant to Plaintiff's credibility to the extent that the level of activity is in fact inconsistent with the claimed limitations.

The ALJ also found Plaintiff's testimony regarding limitations inconsistent with aspects of the medical record. For example, Plaintiff's physical therapy reports which showed she was able to walk pain free for 8 blocks and had an increase in strength in her lower extremities. (*Id*.)  As detailed *supra*, the ALJ also had concerns with Plaintiff's use and misuse of narcotic medication which could have reasonably contributed to the finding that Plaintiff was not entirely credible. Although the ALJ made no affirmative finding of malingering, evidence (through the urinalysis) that Plaintiff was not taking her medication could be considered evidence of malingering, or at least a convincing reason to question her credibility. See *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2008)("If a claimant complains about disabling pain but fails to seek treatment, or **fails to follow a prescribed treatment**, for the pain, an ALJ may use such failure as a basis for

finding the complaint unjustified or exaggerated.")(emphasis supplied).  Evidence of drug seeking behavior can also constitute a clear and convincing reason for discounting Plaintiff's testimony.  See *Hart v. Astrue*, 349 Fed.Appx. 175 (2009)("The record is replete with instances of Hart making misrepresentations, doctor-shopping and drug seeking.  The ALJ thus provided clear and convincing reasons for rejecting Hart's testimony.")

Additionally, medical evidence supports the ALJ's determination that Plaintiff's complaints were not entirely credible:  Dr. Laurie Baltutat, a disability examiner, noted that claimant's subjective symptoms "are not fully credible with exams consistently documenting a greater ROM [range of motion] than her report." (*Id.* at 436).   If a plaintiff's subjective complaints are not consistent with the medical record, that can form a basis for discounting plaintiff's testimony.  See *Carmickle v. Commissioner*, 533 F.3d 1155, 1161 (9th Cir. 2008)("Contradiction with the medical record is a sufficient basis for rejecting a claimant's subjective testimony.").

The ALJ, not this court, is responsible for determining credibility, resolving conflicts in the medical testimony, and resolving ambiguities. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  An ALJ, when making a credibility determination adverse to the Plaintiff, must give specific, clear, and convincing reasons for doing so. *Thomas v. Barnhart*, 278 F.3d 947, 958-9 (9th Cir. 2002).  If the ALJ's credibility finding is supported by substantial evidence in the record, then the court must not engage in second-guessing. *Id.* at 959.  In this case, the ALJ gave clear and convincing reasons, supported by the record, for finding Plaintiff's testimony concerning her limitations to be not entirely credible.

## B. Additional Medical Evidence

Plaintiff submitted to the Appeals Council medical records which included medical treatment that post-dated the ALJ's determination of April 2010.  Most

significantly, Plaintiff underwent spinal surgery in January 2011.(ECF No. 11 at p. 732-33).  This could have drastically changed the level of her physical impairment.  The Appeals Council stated in its letter denying review, that it had considered the evidence. (ECF No. 10-2 at p. 1-5).  Therefore this court may consider it as part of the record. *Brewes v. Commissioner*, 682 F.3d 1157 (9th Cir. 2012).  However, the Appeals Council may consider new and material evidence "only where it relates to the period on or before the date of the administrative law judge hearing decision." 20 CFR § 416.1470.  Therefore, this court may not consider the January 2011 surgical operative note as evidence of whether Plaintiff was disabled prior to April 2010.  Plaintiff may consider making a new application for benefits that would include the January 2011 surgery if she claims that surgery is relevant to a new determination of disability.

### C.  **Does the record as a whole support the ALJ's determination that Plaintiff is not disabled?**

Although the medical evidence of record is subject to differing reasonable interpretations, "[w]here the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  The Commissioner's and ALJ's decision is supported by substantial evidence in the record and is based on proper legal standards. By reason thereof, this court must affirm the decision.  *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

### VIII. CONCLUSION

Plaintiff has raised only one issue on this appeal: did the ALJ properly consider and reject Plaintiff's testimony concerning her physical limitations.  *The ALJ* provided clear and convincing reasons for discounting Plaintiff's testimony. The ALJ noted inconsistencies between daily activities and subjective complaints, and pointed to inconsistencies in the medical record.  The ALJ also pointed to three instances of misuse of prescription medications for pain.  For the aforesaid

ORDER – 13

reasons, the Commissioner's decision must be affirmed by this court.

**IT IS HEREBY ORDERED:**

1.  Plaintiff's Motion for Summary Judgment (ECF No. 14) is **DENIED**.

2.  Defendant's Motion for Summary Judgment (ECF No. 17) is **GRANTED.**

3.  The Clerk is directed to enter Judgment dismissing the Complaint and the claims therein with prejudice.

  **IT IS SO ORDERED.**  The District Court Executive is directed to file this Order, enter Judgment as directed above, and close this file.

DATED this 26th day of April, 2013.

s/ Justin L. Quackenbush<br>
JUSTIN L. QUACKENBUSH<br>
SENIOR UNITED STATES DISTRICT JUDGE

ORDER – 14